[No. 20818.   Department Two.   November 29, 1927.]

MILL & MINE SUPPLY COMPANY, *Appellant,* v. CHARLES
JOHNSON *et al., Respondents.*[1]

[1] TAXATION (130, 131)—COLLECTION—PROPERTY SUBJECT TO SEIZURE
AND SALE—DISTRESS—WRONGFUL DISTRAINT.  Where there is no
direct tax against personal property, it can be sold only for
the personal property tax of the person owning it at the time
of the distraint; and findings that a donkey engine passed to
the defendant under a county tax foreclosure are not sustained
by the preponderance of the evidence, where it appears that
it was seized and sold as the property of G. Bros., loggers, who
had never owned it; that it had never been listed for taxation
as the property of G. Bros., who had listed a different engine
for the year 1925, and that the owner, who loaned it to G.
Bros., had sold it to a *bona fide* purchaser in April, 1925; and it
was seized and sold by the county in 1926 for the personal
property taxes levied against G. Bros., for the years 1925 and
1926.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered July 18, 1927,
upon findings in favor of the defendant, in an action of
replevin, tried to the court.   Reversed.

*Bogle, Bogle & Gates* and *Edward G. Dobrin,* for
appellant.

*James C. McKnight,* for respondents.

ASKREN, J.—Plaintiff brought this action in replevin
to secure possession of a donkey engine.   From a judg-
ment in favor of the defendants, this appeal was taken.

In 1923, Galbraith Brothers were logging some tim-
ber purchased from one Hosner.   He was to advance
them funds up to the sum of two thousand dollars.   At
that time, Galbraith Brothers were using a donkey
engine known as a "9x10" Tacoma Compound, which
they found to be too small for their operations.   They

'Reported in 261 Pac. 386.

told Hosner they would have to have a larger engine, and he agreed to secure a larger one, saying:

"I will buy a donkey then, if we can find one that suits you, and you will have to pay me when we get through."

Hosner then purchased a Humboldt engine for three thousand dollars, and turned it over to Galbraith Brothers who used it for a part, at least, of two years. They never paid for the engine nor for its use. They became financially involved. In April, 1925, Hosner, owing the Mill & Mine Supply Company, appellant, some money, sold the Humboldt donkey to the appellant for one thousand eight hundred dollars. It was then moved to the land of a third party named Wynn, where one of the Galbraiths painted it with paint supplied by appellant.

The respondents being desirous of purchasing a donkey engine, negotiated with appellant at its place of business in Seattle. As far as the record shows, the respondents did not know of the engine until it was suggested by the appellant's salesman, who advised them that appellant was the owner of the donkey and offered to sell it for fifteen hundred dollars. The respondents agreed to inspect the engine and decide whether they would purchase. Shortly thereafter, one of them notified appellant that the engine had been sold a few days before by Thurston county, for taxes. Appellant took immediate steps to ascertain the facts, and learned that Thurston county had sold the donkey in question for the 1925 and 1926 taxes assessed against Galbraith Brothers. The sale was held at Wynn's property, and one Turner bid two hundred dollars for it, and paid that amount to the sheriff. The respondents terminated their negotiations with the appellant, and one week after the sheriff's sale

purchased the donkey from Turner for eleven hundred dollars. Thereupon this suit was brought to recover possession of the donkey.

At the trial of the action, it clearly appeared that this donkey engine had never been returned for taxes by Galbraith Brothers, but they had listed the smaller engine known as a ''Tacoma Compound.'' The assessor's list, however, did not detail the item, but it was merely labeled ''Donkey $1,000.'' There being no direct tax assessed against the Humboldt donkey, it is apparent that it could only be sold for the personal property tax of the Galbraith Brothers if it were their property at the time of the distraint. The trial court was of the opinion that the title to the donkey was, at all times, in Galbraith Brothers, and therefore duly subject to be sold for taxes assessed against them.

A careful reading of the evidence clearly preponderates against such a finding. The evidence which tended to show ownership in them was as follows: their use of the donkey engine in their logging operations; the statement of Hosner that he would get a donkey and then when they got through logging they would have to pay for it; the mortgaging of the engine to an Olympia bank by Galbraith Brothers; and a claimed offer to sell the same. These facts, however, were many of them greatly weakened in probative force. It appeared conclusively that no agreement of sale was ever entered into between Hosner and Galbraith Brothers, both of them denying that any sale had been made or terms agreed upon. The mortgaging of the donkey by Galbraith Brothers was admitted by both Hosner and Galbraith Brothers to have been done at the instance and permission of Hosner, who had advanced Galbraith Brothers a trade acceptance which

could only be negotiated by giving the mortgage as security. Thereupon Hosner gave permission to execute the mortgage. The offer to sell, as claimed by witnesses for the respondents, was denied, but at most its only effect would be to impeach the testimony of Galbraith Brothers that they did not own the donkey.

On the other hand, it was shown without contradiction that Hosner had sold the donkey to the appellant, and Galbraith Brothers disclaimed any ownership in it. If it be admitted that Galbraith Brothers had a right to purchase the engine, or had actually purchased it from Hosner, if they permitted, assisted or acquiesced in the sale by Hosner to the appellant, title certainly passed to the appellant in April, 1925. No taxes were ever levied against this particular engine nor against its owner, the appellant; and we therefore have a replevin case where appellant's donkey engine, purchased in April, 1925, was sold by Thurston county in 1926 for personal property taxes assessed against the Galbraith Brothers for 1925 and 1926.

With this view of the record, we need not consider the other questions raised.

Judgment reversed.

MACKINTOSH, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.